(958 P.2d 1172)
No. 79,797

LORI DENK and COLTON DENK, by and through LORI DENK, his
next friend, *Appellants*, v. JASON TAYLOR, *Appellee*.

Opinion filed
May 22, 1998.

*Jeannine D. Herron*, of Topeka, for appellants.

No appearance for appellee.

Before BRAZIL, C.J., GREEN, J., and JANICE D. RUSSELL, District
Judge, assigned.

RUSSELL, J.: Lori Denk appeals the district court's order in a
paternity action that her minor son's surname be changed from
Denk to Taylor.

Colton Denk was born on July 16, 1996, to Denk, who was not
married. In October 1996, Denk filed a paternity action against
Jason Taylor, alleging that he was the father of Colton. Her petition
asked that paternity be established and that Taylor be ordered to
pay child support for Colton. DNA testing determined to a 99.75
percent probability that Taylor was the father of Colton.

In an order filed November 26, 1996, the district court declared
that Taylor was Colton's father and ordered him to pay child sup-
port in the amount of $227 per month. The district court further
ordered supervised visitation for Taylor and Colton and set a sched-
ule for the visitation.

On July 2, 1997, the district court held a hearing on matters
reserved from the November 26, 1996, hearing and a hearing held

on March 21, 1997. The parties announced that they had reached an agreement on all matters except whether Colton's surname should be changed to Taylor and how the fee to correct Colton's birth certificate should be divided between the parties. At the hearing, the parties argued whether the district court had jurisdiction in a paternity action to order a change of name. Denk argued that the district court had no jurisdiction, absent the consent of both parties, and Taylor argued that the district court had jurisdiction to order the change of name.

K.S.A. 38-1121 governs the authority of a court to determine the existence or nonexistence of the parent and child relationship. Upon determining that a party is the biological father of a child, the court must make provisions for the child's support and education.

"(c) Upon adjudging that a party is the parent of a minor child, the court shall make provision for support and education of the child including the necessary medical expenses incident to the birth of the child. . . . The court shall enter such orders regarding custody and visitation as the court considers to be in the best interest of the child." K.S.A. 38-1121.

Further, K.S.A. 38-1130 allows the court to amend the birth certificate to add the name of a parent, correct the name of either parent or of the child, or change the child's last name, *upon request of both parents*.

Denk argued that the statute does not provide authority for the district court to change the child's last name absent the consent of both parents, and she did not give her consent to the change of name. In March 1997, when the district court met with the attorneys to discuss the status of their conciliation efforts, there was some discussion of the question of changing Colton's last name, but Denk was not present at this meeting and contended at the July 2, 1997, hearing that she did not authorize her attorney to agree to change her son's name.

Several times during the July 2, 1997, hearing, the parties referred to a recent Kansas Court of Appeals decision, *In re Marriage of Killman,* 23 Kan. App. 2d 975, 939 P.2d 970 (1997). Based upon our decision in *Killman,* the district court overruled Denk's objec-

tions to the court's jurisdiction to change Colton's name, and ordered his last name changed to Taylor.

Subsequent to the district court's decision, our Supreme Court reversed *Killman. In re Marriage of Killman,* 264 Kan. 33, 955 P.2d 1228 (1998). In *Killman,* the district court's authority to order a change of name for a minor child whose custody was subject to the jurisdiction of the court through a divorce action was at issue. We held that the power to change a child's name in a divorce action was inferred under the authority of K.S.A. 1996 Supp. 60-1610(a), which empowers courts to make orders concerning the support, education, custody, and residency of the minor children of divorcing parents.

Our Supreme Court reversed, stating:

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]

". . . K.S.A. 1996 Supp. 60-1610 specifically provides that a divorce decree may include orders regarding child support, education, child custody, and residency and that, upon the request of a spouse, the court shall order the restoration of that spouse's maiden or former name. After applying each of the previously discussed rules of statutory construction, we conclude there is no statutory authority in K.S.A. 60-1601 *et seq.* that authorizes the court to change the name of a minor child of the parties.

"A district court having jurisdiction over a child's custody in a divorce action does not have jurisdiction or statutory authority to change the name of the child of the marriage. If the legislature had wished to confer authority to change a child's name in a divorce action, it would have specifically done so as it did in reference to child support, education, custody, and restoration of a spouse's former name." 264 Kan. at 42-43.

Following the rational of *Killman,* we must hold that the Kansas Parentage Act, K.S.A. 38-1110 *et seq.,* does not confer upon the district court the authority to change a child's name, absent the express consent of both parents. The Act gives courts the authority

to determine paternity; make orders concerning the support and education of the child, including necessary medical expenses incident to the birth; and to make orders concerning custody and visitation. K.S.A. 38-1121(c) and (d). Further, the Act gives the courts the authority to change the child's name with the consent of both parties. K.S.A. 38-1130. If the legislature had intended to grant the courts authority to change a child's name in a paternity proceeding without the consent of one of the parents, it would have listed that power as one of the authorized orders in the Act. Since it was not included in the Act, we must presume that the legislature did not intend to grant such authority to the courts.

The order of the district court changing Colton's name to Taylor is reversed.